1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH J. UPCHURCH,                        No.  2:25-cv-1918 DC AC PS

12              Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   INTERNATIONAL UNION OF
     PAINTERS AND ALLIED TRADES
15   INDUSTRY PENSION PLAN; and
     NORTHERN CALIFORNIA GLAZIERS,
16   ARCHITECTURAL METAL AND
     GLASSWORKERS PENSION TRUST
17   FUND,

18              Defendants.

19

20        Plaintiff paid the filing fee and is proceeding in this matter pro se; pre-trial proceedings

21   are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  Defendants filed

22   separate motions to dismiss this case.  ECF No. 15 (motion of defendant Northern California

23   Glaziers, Architectural Metal and Glassworkers Pension Trust Fund ("Glaziers")); 18 (motion of

24   defendant International Union of Painters and Allied Trades Industry Pension Plan ("IUPAT")).

25   Plaintiff opposed the motions (ECF No. 23), and defendants submitted replies (ECF Nos. 24, 26).

26   All parties appeared for oral argument on December 17, 2025.  ECF No. 29.  For the reasons set

27   forth below the undersigned recommends the Glaziers' motion to dismiss be GRANTED with

28   leave to amend, and that the IUPAT motion be GRANTED in part and DENIED in part.

1

1

### I.    Background

2    This case is brought pursuant to the Employee Retirement Income Security Act of 1974

3    (ERISA).  "The purpose of ERISA is to provide a uniform regulatory regime over employee

4    benefit plans."  Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004).  ERISA § 502(a)(1)(B)

5    provides that "[a] civil action may be brought—(1) by a participant or beneficiary—... (B) to

6    recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

7    the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §

8    1132(a)(1)(B).

9    A.    The Complaint

10    Plaintiff filed this case on July 7, 2025.  ECF No. 1 at 1.  He sues two defendant pension

11    plans: the International Union of Painters and Allied Trades Industry Pension Plan ("IUPAT")

12    and the Northern California Glaziers, Architectural Metal and Glassworkers Pension Trust Fund

13    ("Glaziers").  Id. at 2.  Plaintiff accrued over 29 years of credited service and more than 24

14    benefits units under the Glaziers Plan.  Id.  Glaziers is in a "Reciprocal Agreement" with IUPAT,

15    and this plan "requires the first qualifying Plan" (in this case, Glaziers) to "initiate coordination of

16    benefits with other signatory Plans."  Id. at 2.

17    Plaintiff submitted pension plan applications to each plan.  Glaziers delayed but ultimately

18    began paying out plaintiff's benefits, but IUPAT denied benefits citing lack of covered

19    employment.  Id.  Plaintiff alleges that IUPAT adopted a "rehabilitation plan" in January 2022,

20    which it erroneously applied to plaintiff's benefits to deny him access to early retirement.  Id.

21    Plaintiff alleges the "Reciprocal Agreement" prohibits changes in plan language that affect

22    reciprocal benefits.  Id.  Plaintiff further alleges that Glaziers failed to timely calculate Plaintiff's

23    hours despite repeated requests, which has delayed his ability to plan for retirement.  Id.  When

24    the calculations were performed, plaintiff learned he could have retired as early as September of

25    2022.  Id.

26    Plaintiff's first claim is for denial of benefits under ERISA§ 502(a)(1)(B), asserted only

27    against IUPAT.  Id. at 2-3.  Second, plaintiff alleges breach of fiduciary duty under ERISA §

28    404(a)(1) against Glaziers, on the basis that Glaziers failed to prudently administer the Plan and

delayed in providing accurate service information.  Id.  Finally, plaintiff alleges violation of the

Reciprocal Agreement by failing to follow its mandatory terms by both Glaziers and IUPAT.  Id.

Plaintiff asks the court to order defendants to pay all benefits owed and declare plaintiff eligible

for benefits under the Reciprocal Agreement.  Id.

      B.  Documents Incorporated Into the Complaint

The legal standards applied to motions to dismiss, including consideration of documents

incorporated into a complaint, are discussed in further detail below.  For ease of reference, the

court provides background information obtained from incorporated documents here.  Plaintiff

stated on the record at oral argument that he does not dispute the authenticity of these documents

as provided to the court by defendants.

First, plaintiff's complaint relies on and incorporates the Reciprocal Agreement for Joint

Industry Pension Funds of All District Councils and Local Unions Affiliated with the

International Union of Painters and Allied Trades ("Reciprocal Agreement").  ECF No. 1 at 2.

The Reciprocal Agreement is an agreement between pension plans sponsored by unions affiliated

with IUPAT; a copy is provided at ECF No. 16, and authenticated by the declaration of Neslim

Macias, pension Manager for the Glaziers Pension Plan (ECF No. 15-1).  ECF No. 16 at 3.

Glaziers is a party and signatory to the Reciprocal Agreement, as indicated on page 14 of the

Agreement.  Id. at 15.  IUPAT is a party and signatory to the Reciprocal Agreement, as indicated

on page 21 of the Agreement.  Id. at 22.  Section 2 of the Agreement contains a "Cooperation"

clause, which requires signatories to "exchange information" and "cooperate in the exchange of

relevant information and documents."  Id. at 4.  Exhibit A, Section 12 of the Agreement states,

"The Plan under which an employee first makes application for the benefits shall initiate the

processing of a partial pension with the other signatory plans based upon information supplied by

the employee."  Id. at 8.

The Reciprocal Agreement sets forth a framework where signatory plans, adopt as part of

their plans Exhibit A of the Reciprocal Agreement.  Under Exhibit A, signatory plans agree to

provide partial pensions when a participant "would be eligible for any type of pension . . . if his

total pension credit were treated as service under this plan."  ECF No. 18-1 at 200.  The "total

1  pension credit" is defined as the "pension credit granted under this plan and the other signatory

2  plans together." Id.  The "pension credit," in turn, is defined as "those periods of service during

3  which credit is granted for benefit accrual purposes," which "shall not necessarily cover periods

4  for which a plan grants credit for vesting purposes under ERISA." Id.  Section 2 of Exhibit A

5  states that "[p]ension credits under each plan shall be based on the rules in effect in that plan at

6  the time the employment occurred." Id.  Once plans sign on to the Reciprocal Agreement, they

7  agree that "no change shall be made in the provisions" contained in "Exhibit A of the agreement,

8  including by modifying the plan in such a way that "would have the effect of changing the

9  provisions of Exhibit A." Id.

10       Second, plaintiff's complaint relies on and incorporates the IUPAT Pension Plan

11 Documents, which are provided at ECF No. 18-1 beginning on page 4, and authenticated by the

12 declaration of Daniel R. Williams, Fund Administrator for the IUPAT Pension Fund.  ECF No.

13 18-1 at 1.  The IUPAT Plan is a defined benefit pension plan that provides eligible participants

14 lifetime pension benefits upon their retirement, paid from a trust fund funded by employer

15 contributions made pursuant to collective bargaining agreements with unions affiliated with the

16 International Union of Painters and Allied Trades.  ECF No. 18-1 at 17-18.  The IUPAT Plan, as

17 amended by the Rehabilitation Plan, governs the pension benefits provided to eligible plan

18 participants.  Id. at 39-44.  The IUPAT Plan sets forth the range of retirement benefits available to

19 participants.  The normal retirement benefit, the "Normal Retirement Pension," is available to

20 "Vested Participant[s]" upon attaining the plan's "Normal Retirement Age," which is the later of

21 age 65 or their fifth anniversary of plan participation.  Id. at 39.  The IUPAT Plan also includes

22 "Early Retirement Pension" and "Special Early Retirement Pension" provisions for certain

23 individuals who retire as early as age 55.  Id. at 42-44.  These subsidized benefits are only

24 available to eligible "Active Employees."

25       Plan participants are "Active Employees" if they are not retired and have "earned 450

26 Benefit Hours in the three-year period immediately preceding the relevant date." Id. at 103.

27 "Benefit Hours" are defined, in relevant part, as "Hours of Service in Covered Employment with

28 a FIP Compliant Employer after 2011." Id. at 106.  "Covered Employment" is defined, in

4

relevant part, as "Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan" or "Paid Hours of Service under a reciprocal agreement." Id. at 107.

Third, plaintiff's complaint relies on and incorporates the Rehabilitation Plan implemented by IUPAT. A copy of the Rehabilitation Plan, also authenticated by Mr. Williams, is provided at ECF No. 18-1 beginning at page 131. The Rehabilitation Plan's changes to benefits became effective on April 1, 2022, and applied "to applications that are received by the Fund Office on or after that date." Id. at 171. In relevant part, the Rehabilitation Plan eliminated the IUPAT Plan's benefit that previously allowed vested participants who were not "Active Employees" to receive a reduced pension before age 65. Id. at 173. The plain included the following chart to demonstrate the change:

| Old Rule | *Eligibility*: The Deferred Vested Early Retirement Benefit may be payable at any time on or after attainment of age 55 and prior to attainment of age 65. |
| | *Amount*: The amount of the Deferred Vested Early Retirement Benefit is equal to the Accrued Benefit with a reduction for early retirement. The benefit is reduced by 6% per year (0.5% per month) that retirement begins before age 65. |
| New Rule | *Eligibility*: The Deferred Vested Early Retirement Benefit may be payable at any time on or after attainment of age 65. |
| | *Amount*: The amount of the Deferred Vested Early Retirement Benefit is equal to the Accrued Benefit. |

Id.

The Rehabilitation Plan also adjusted the benefit amounts paid out for participants receiving either of the plan's two remaining early retirement benefits and certain eligibility requirements for the "Special Early Retirement Benefit," Id. at 174-175, but did not change the requirement that these benefits are only available to "Active Employees" and did not change the definition of "Active Employees," id. at 173-175.

Fourth, plaintiff's complaint relies on and incorporates his application for benefits and the denial thereof. In IUPAT's denial, issued July 7, 2022, IUPAT stated that plaintiff's application for benefits, which sought early retirement benefits pursuant to plaintiff's age at the date of application, was denied because none of his "Benefit Hours" had been reported in the three years

5

prior to his retirement date such that he did "not have at least 450 Benefit Hours reported in the three years prior to [his] retirement date" as required to be an "Active Employee," a prerequisite for an "Early Retirement Pension" under the IUPAT plan and the Rehabilitation Plan.  ECF No. 18-1 at 217.  Plaintiff appealed this decision with IUPAT in September of 2023.  Id. at 220.  In this appeal, he explained that he had "spent the last ~10 years employed by a DC16 Signatory Contractor, PVBS, Inc., that was wholly owned by me" and that such contractors can have up to "two (2) Owner-Members who are allowed to work at the trade and with the tools and are not required to make contributions to any of the Funds mandated in the CBA."  Id.  Plaintiff stated that PVBS was party to an agreement that incorporated the Glaziers Plan and that under that plan, he should "be credited with 2080 hours (with zero contributions) for each year" worked in this capacity."  Id.  He requested that IUPAT "recognize all the hours earned working at our trade . . . whether as a Member or Owner-Member, remove the Permanent Break In Service from my record and award my Pension."  Id.

On November 2, 2023, IUPAT issued an Appeal Determination denying plaintiff's appeal.  ECF No. 18-1 at 222.  The Determination incorrectly stated that the Glaziers Plan was not a signatory to the Reciprocal Agreement but also stated that even if IUPAT permitted the Glaziers Plan service to count as reciprocal credit, this service would count only for vesting purposes, not for benefit accrual purposes.  Id. at 224.  Accordingly, the Determination states, plaintiff's no-contribution hours did not qualify for the 450 benefit-hour requirement to become an "Active Employee."  Id.  The Determination also states that "before the enactment of the Rehabilitation Plan, you may have been eligible for a reduced Vested Pension (if you qualified) but that form of benefit was eliminated."  Id. at 3.  Accordingly, IUPAT denied the appeal, explaining that "because you do not meet the Active Employee requirements you must wait until you attain Normal Retirement Age before being eligible for a pension benefit from the Pension Plan."  Id.

In June of 2025, plaintiff informed IUPAT that the Glaziers Plan was in fact a signatory to the Reciprocal Agreement.  ECF No. 18-1 at 228.  IUPAT reconsidered its decision and issued a new Appeal Determination, superseding the first.  Id. at 230.  The 2025 Determination acknowledged that Glaziers is indeed a signatory to the Reciprocal Agreement but reiterated that

1  plaintiff was not entitled to an early retirement pension because he was not an "Active

2  Employee." Id. IUPAT again explained that reciprocal credit "is only available for periods of

3  service during which the credit is granted for benefit accrual purposes" and that plaintiff had no

4  service for benefit accrual proposes under the Glaziers Plan after 2017. Id. at 3. Plaintiff

5  subsequently filed this lawsuit.

6  **II.  Applicable Legal Standards**

7       Defendants move to dismiss on several grounds. IUPAT argues that the complaint must

8  be dismissed because plaintiff fails to allege what benefits he is entitled to, because the Plan was

9  correct to deny plaintiff benefits, and because the Reciprocal Agreement does not bar changes

10  made by the Rehabilitation Plan. ECF No. 18 at 12-18. Glaziers Plan argues plaintiff lacks

11  constitutional standing to bring a suit against it, and that plaintiff fails to state a claim upon which

12  relief can be granted. ECF No. 15.

13       A. Legal Standards Governing Motions to Dismiss Under Rule 12(b)(6)

14       "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

15  sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

16  1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

17  sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901

18  F.2d 696, 699 (9th Cir. 1990).

19       In order to survive dismissal for failure to state a claim, a complaint must contain more

20  than a "formulaic recitation of the elements of a cause of action;" it must contain factual

21  allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v.

22  Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of

23  facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

24  action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35

25  (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to

26  'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

27  (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

28  factual content that allows the court to draw the reasonable inference that the defendant is liable

1    for the misconduct alleged." Id.

2          In reviewing a complaint under this standard, the court "must accept as true all of the

3    factual allegations contained in the complaint," construe those allegations in the light most

4    favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus,

5    551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

6    960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

7    Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of

8    factual allegations, or allegations that contradict matters properly subject to judicial notice. See

9    Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

10   Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

11         Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

12   Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may

13   only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support

14   of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir.

15   2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential

16   elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

17   266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se

18   litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend,

19   unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809

20   F.2d 1446, 1448 (9th Cir. 1987).

21         When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence

22   outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

23   summary judgment, and it must give the nonmoving party an opportunity to respond. A court

24   may, however, consider certain materials—documents attached to the complaint, documents

25   incorporated by reference in the complaint, or matters of judicial notice—without converting the

26   motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903,

27   907-08 (9th Cir. 2003). A court may rely on, at the motion to dismiss stage, "unattached evidence

28   on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the

1  document is central to the plaintiff's claim; and [c] no party questions the authenticity of the

2  document.'" Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.,

3  983 F.3d 435, 439 (9th Cir. 2020) (quoting United States v. Corinthian Colls., 655 F.3d 984, 998–

4  99 (9th Cir. 2011)).

5        Here, as noted above, plaintiff's complaint incorporates and necessarily relies on the

6  IUPAT Pension Plan, as amended and restated as of January 1, 2021 ("Plan Document"), the

7  Rehabilitation Plan adopted by the IUPAT Plan, the Reciprocal Agreement to which the Glazier's

8  Plan and IUPAT are signatories. The complaint also necessarily relies on and incorporates the

9  administrative documents associated with the denial of his benefits, including IUPAT's July 7,

10  2022 letter informing plaintiff that his pension application was denied (ECF No. 18-1 at 217),

11  plaintiff's September 10, 2023 appeal (id. at 220), IUPAT's November 2, 2023 appeal

12  determination (id. at 222), and the amended reappeal determination issued July 3, 2025 (id. at

13  230), which superseded the November 2, 2023 documents. The authenticity of the documents,

14  which have been provided to the court by the defendants, is undisputed (plaintiff stated at the

15  hearing, "those [documents] are the same ones I've looked at."). Accordingly, these documents

16  may be considered at the motion to dismiss stage. In considering these documents, the court does

17  not accept as true any legal conclusions contained therein.

18        B. Legal Standards Governing Standing and Motions to Dismiss Under Rule 12(b)(1)

19        "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

20  threshold requirement imposed by Article III of the Constitution by alleging an actual case or

21  controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101(1983); see also City of Oakland v.

22  Lynch, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III

23  standing is not a 'case or controversy,' and Article III federal courts lack subject matter

24  jurisdiction over such suits." (internal citations omitted)). An actual case or controversy will be

25  held to exist when a plaintiff establishes standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560

26  (1992). "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is

27  sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

28  hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

1    'likely' to be 'redressed by a favorable decision.'" <u>Bates v. United Parcel Serv., Inc.</u>, 511 F.3d
2    974, 985 (9th Cir. 2007) (citing <u>Lujan</u>, 504 U.S. at 560–61).

3         Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a
4    complaint for lack of federal jurisdiction.  Such "attacks on jurisdiction can be either facial,
5    confining the inquiry to allegations in the complaint, or factual, permitting the court to look
6    beyond the complaint." <u>Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County</u>,
7    343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir.
8    2000)). "Once the moving party has converted the motion to dismiss into a factual motion by
9    presenting affidavits or other evidence properly brought before the court, the party opposing the
10   motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing
11   subject matter jurisdiction." <u>Id.</u> (citing <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir.
12   1989)). "As with a motion for summary judgment, when a court is faced with a factual attack on
13   standing pursuant to Rule 12(b)(1), the court must leave the resolution of material factual disputes
14   to the trier of fact when the issue of standing is intertwined with an element of the merits of the
15   plaintiff's claim." <u>Bowen v. Energizer Holdings, Inc</u>., 118 F.4th 1134, 1144 (9th Cir. 2024)
16   (citation omitted).

17                    **III.    Glaziers Motion to Dismiss**

18        Glaziers moves to dismiss plaintiff's complaint for lack of standing under Fed. R. Civ. P.
19   12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Plaintiff asserts two
20   claims against the Glaziers: Count II for Breach of Fiduciary Duty (29 U.S.C. § 1104) and Count
21   III for Violation of the Reciprocal Agreement (29 U.S.C. § 1132(a)(3).  ECF No. 1 at 2-3.[1]

22        A. <u>Breach of Fiduciary Duty Claim</u>

23        With respect to the administration of his benefits by Glaziers, the only allegation made by
24   plaintiff in the complaint is that he "accrued over 29 years of credited service and more than 24
25   benefit units under the Northern California Glaziers Pension Plan" but the "Glaziers Plan failed to
26   timely calculate Plaintiff's hours despite repeated requests, which delayed his ability to plan

27

28   _____
     [1]  Count I for Denial of Benefits is asserted solely against IUPAT.  ECF No. 1 at 2.

1   retirement.  When they did so, it showed Plaintiff could have retired as early as September 2022."

2   Id. at ¶ 12.  Plaintiff alleges the Glaziers Plan breached a fiduciary duty owed to him pursuant to

3   ERISA § 404(a)(1) because it "failed to prudently administer the Plan and delayed providing

4   accurate service information."

5          The allegations of the complaint do not establish plaintiff's standing to bring this claim

6   because he has not identified how, even if he were to prevail, the Glaziers Plan caused an injury

7   that is redressable by a favorable decision from this court.  Bates, 511 F.3d at 985.  The complaint

8   alleges wrongful calculation of the hours reported to IUPAT, not wrongful denial of benefits by

9   Glaziers.  The complaint does not plainly seek any benefits directly from Glaziers.  However,

10  plaintiff clarified at oral argument on the motion to dismiss that he does, in fact, intend to claim

11  that benefits were wrongfully denied by Glaziers for a finite period of time, from the date of his

12  claim to the date that benefits started to be paid (a period of several months).  Because this claim

13  is not clear from the complaint, it cannot be considered at this time.  Even if it could be

14  considered, it would be properly brought as a denial of benefits claim, not as a fiduciary duty

15  claim.  As discussed below, plaintiff should be given leave to amend to clarify this claim.

16         However, setting aside the potential claim for denial of benefits, it is apparent that

17  plaintiff cannot state a claim against Glaziers for breach of fiduciary duty.  Plaintiff asserts that

18  Glaziers breached its fiduciary duty to him because "[a]s the Qualifying Plan, the Glaziers Plan

19  was required to initiate the reciprocal claim, notify the IUPAT Fund, and transmit Plaintiff's

20  credited hours.  It failed to do so.  This created the administrative vacuum that led the IUPAT

21  Fund to process the claim as a standalone request under its internal rules – contrary to the

22  Agreement."  ECF No. 23 at 4.  Glaziers replies that these allegations cannot "establish even the

23  threshold elements of his breach of fiduciary duties, since the Glaziers Pension Plan is not a

24  fiduciary and calculating benefits is not a fiduciary function."  ECF No. 26 at 2.

25         Pointing to U.S. Department of Labor guidance, Glaziers contends that the law is clear

26  that "[c]alculation of services and compensation credits for benefits" is not a fiduciary function.

27  See Agency guidance at 29 C.F.R. § 2509.75-8 at D-2.  Further, pursuant to this same agency

28  guidance, "determining eligibility for . . . benefits," "[p]rocessing of claims," "[m]aintenance of

participants' service . . . records," and "[p]reparation of reports concerning participants' benefits"
are not fiduciary functions under ERISA § 3(21).  Id.; see also, Amalgamated Clothing & Textile
Workers Union, AFL-CIO v. Murdock, 861 F.2d 1406, 1414 (9th Cir. 1988) ("mishandling of an
individual benefit claim does not violate any of the fiduciary duties defined in ERISA.").
Plaintiff does not contradict this line of authority.  It appears clear to the court that the crux of
plaintiff's claim is one for denial of benefits, not breach of fiduciary duty.  Because plaintiff has
not identified a fiduciary duty that Glaziers owed or breached, the fiduciary duty claim against the
Glazier's Plan should be dismissed.

B.  Violation of Reciprocal Agreement Claim

Glaziers argues that plaintiff lacks standing and fails to state a claim against the Plan
because the injury he asserts resulted from Glaziers' failure to communicate with IUPAT – that
IUPAT denied his claim under the terms of IUPAT's own plan – cannot be redressed by any
claims against the Glaziers Plan.  ECF No. 26 at 2.  The court agrees that on this point, plaintiff
failed to identify a claim against Glaziers that is redressable by a court order in his favor, and
accordingly he lacks standing to pursue this claim.

Additionally, ERISA does not contemplate a cause of action by a beneficiary for breach of
the Reciprocal Agreement.  The civil enforcement provision of ERISA, which plaintiff relies
upon, states in relevant part that a plan participant or beneficiary may bring a civil action either to
"recover benefits due to him under the terms of his plan, to enforce his rights *under the terms of
the plan* . . ."  29 U.S.C. § 1132 (a)(3) (emphasis added).  Glaziers contends that the allegation
that it breached the Reciprocal Agreement does not come within the scope of this provision
because it is not an allegation that Glaziers violated plan terms.  The court agrees that this section
does not appear to provide plaintiff an avenue for civil suit with respect to this claim.  Further,
while plaintiff asserts, at least in his opposition to the motion to dismiss, that Glaziers repeatedly
failed to timely calculate his hours and confirm his retirement eligibility and that this delay
"caused plaintiff to lose several months of pension income," this does not explain how Glaziers
violated the Reciprocal Agreement, which only requires that the signatory plans provide the
information to one another, not to individual enrollees.  Accordingly, the court concludes that

12

1    plaintiff cannot proceed on his claim that Glaziers violated the Reciprocal Agreement.

2        C.   Leave to Amend

3        Having fully considered Glaziers' motion to dismiss, all relevant papers, and oral

4    argument, the undersigned concludes that the motion should be granted but that plaintiff should

5    be allowed to file an amended complaint bringing a wrongful denial of benefits claim against

6    Glaziers.  In general, a pro se litigant "must be given leave to amend his or her complaint unless it

7    is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"

8    Colbert v. Borg, 967 F.2d 585, 585 (9th Cir. 1992) (quoting Noll v. Carlson, 802 F.2d 1446, 1448

9    (9th Cir. 1987).  Due to a lack of familiarity with the law, the rule "'favoring liberality in

10   amendments to pleadings is particularly important for the pro se litigant.'"  Lopez v. Smith, 203

11   F.3d 1122, 1131 (9th Cir. 2000) (quoting Noll, 802 F.2d at 1448).  Here, while plaintiff's claims

12   as alleged are not viable, he made clear at oral argument that he does contend that Glaziers

13   wrongfully denied him benefits for a finite period of time between his application date and

14   Glaziers' delayed approval date.  Accordingly, the court determines that plaintiff was attempting

15   to bring a claim for improper denial of benefits.  Plaintiff should be allowed to amend his

16   complaint to properly assert this claim against Glaziers.

17            **IV.    IUPAT's Motion to Dismiss**

18       IUPAT moves to dismiss the two claims asserted against it, Wrongful Denial of Benefits

19   and Violation of the Reciprocal Agreement, for failure to state a claim up on which relief can be

20   granted pursuant to Fed. R. Civ. P. 12(b)(6).

21       A.  Denial of Benefits Claim

22       ERISA provides district courts with jurisdiction to review ERISA plan administrators'

23   decision to deny benefits under a covered plan. 29 U.S.C. § 1132(e)(1); Thomas v. Oregon Fruit

24   Prods. Co., 228 F.3d 991, 992 (9th Cir. 2000).

25       1.   Applicable Standard of Review

26       A challenge to a denial of benefits must be reviewed under a de novo standard "unless the

27   benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for

28   benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

13

1   101, 115 (1989).  The administrator's discretionary authority must be "unambiguously retained,"

2   Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999) (*en banc*), such that that the

3   plan itself unambiguously confers the full and sole discretion to interpret the terms of the plan

4   upon the plan administrator.  Opeta v. Nw. Airlines Pension Plan, 484 F.3d 1211, 1216–17 (9th

5   Cir. 2007).  Where a plan administrator has such power by the terms of the plan itself, a district

6   court may review the administrator's denial of benefits only for abuse of discretion.  See Abatie

7   v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (citing Firestone, 489 U.S. at

8   115); see also Kearney, 175 F.3d at 1087.

9       Here, IUPAT empowers its Trustees as the "named fiduciary of the Plain under ERISA"

10  and plainly states that the Trustees have "all authority and discretion to manage and control the

11  Plan and Plan assets that is not reserved to the Employers and Union or delegated to others

12  through the Trust Agreement or other action, including contracts."  ECF No. 18-1 at 14 (§2.01).

13  The Trustees are empowered to appoint an administrator, who shall have "the authority and

14  discretion necessary or appropriate to the performance of his duties."  Id. (§2.02).  In light of this

15  language unambiguously retaining discretionary authority to the Trustees of the IUPAT plan, the

16  court concludes the abuse of discretion standard of review is appropriate.

17      2.  Denial of Benefits Analysis

18      IUPAT contends that it did not wrongfully deny benefits because plaintiff does not qualify

19  for Early Retirement under the plan's rules, which require that an applicant be an "Active

20  Employee" to be eligible.  ECF No. 18-1 at 41- 44 (§§ 6.07, 6.10).  IUPAT notes that this

21  requirement was unchanged by the Rehabilitation Plan.  ECF No. 18 at 14.  IUPAT states that

22  plaintiff was not an "Active Employee" when he applied for Early Retirement because he had not

23  earned 450 "Hours of Service" in "Covered Employment" (defined in relevant part as "Hours of

24  Service for which an Employer is obligated to make contributions to the Plan" *or* "Paid Hours of

25  Service under a reciprocal agreement" (ECF No. 18-1 at 107) in the three years before he filed his

26  application.

27      Plaintiff acknowledges that he made no contributions to the plan during the relevant time

28  period.  Instead, he spent the last 10 years employed by a contracting business that he owned

14

1   himself and which, under a collective bargaining agreement that the business signed, was not

2   required to make contributions to any pension funds in order to receive service hours.  Plaintiff

3   explained in his appeal letter to IUPAT's denial that Glaziers credits owner-members like himself

4   with "2080 hours (with zero contributions) for each year they work," and he asked IUPAT to

5   recognize those hours as they are recognized by Glaziers, pursuant to the Reciprocal Agreement.

6   However, IUPAT concluded that hours credited by Glaziers "with zero contributions" do not

7   count as "Paid Hours of Service" that result in accruing benefit hours under the terms of its own

8   plan, and accordingly, plaintiff did not have sufficient hours to start receiving his pension from

9   IUPAT.  ECF No. 18 at 15.

10          Even reviewing under an abuse of discretion standard, the undersigned is unconvinced by

11  IUPAT's argument.  IUPAT equates "hours for which contributes were made" with "paid hour of

12  service," but the plain language of the Plan itself does not obviously draw this same connection.

13  As stated above, "Covered Employment" includes "Paid Hours of Service under a reciprocal

14  agreement."  ECF No. 18-1 at 107.  This definition of covered employment is listed as a

15  subsection, separately from and in addition to, another definition: "Hours of Service for which an

16  Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan[.]"  Id.

17  The fact that these two subsections are separately identified strongly suggests that "Covered

18  Employment" is not *limited* to hours for which contributions are made, but also separately

19  references hours which should be credited under a reciprocal agreement, indicates that the

20  reciprocal hours should be credited whether contributions were made for those hours or not.

21          Further, the term "Paid Hours of Service," which is included in the definition of "Covered

22  Employment" where reciprocal plans are concerned, is an undefined term in the IUPAT plan.

23  "Hour of Service" is defined in part as "Each hour for which an Employee is paid or entitled to

24  payment for the performance or nonperformance of duties with an employer."  Id. at 109.  This

25  definition, to the extent it applies, says nothing about hours counting only if contributions are

26  made to the plan.  At oral argument, IUPAT argued that the flaw in plaintiff's theory is that "the

27  terms of the reciprocal agreement are not an "'on off' switch – you have to qualify under each

28  plan."  Even assuming this is the case, and that plaintiff has to qualify for the IUPAT pension

1  under that plan's own terms, it is not at all clear that plaintiff failed to qualify.  This is because the

2  IUPAT plan contemplates, by its own terms, crediting hours that are "Paid Hours of Service"

3  under a reciprocal agreement, and "Paid Hours of Service" do not plainly include a requirement

4  of plan contributions.  Defendant has not shown that, under the terms of its own plan, the hours

5  for which plaintiff paid no contribution but for which Glaziers conferred credit hours are not

6  "Paid Hours of Service" that count toward "Covered Employment."  Accordingly, IUPAT has not

7  met its burden as the moving party, and the motion to dismiss should be denied on this point.

8       B.  Violation of the Reciprocal Agreement Claim

9       Plaintiff's claim for violation of the Reciprocal Agreement is brought pursuant to 29

10  U.S.C. § 1132(a)(3), which is a "catchall" or "safety net" provision in ERISA designed to provide

11  an avenue for "appropriate equitable relief for injuries caused by violations that [§ 1132] does not

12  elsewhere adequately remedy."  Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).  Plaintiff's

13  claim brought under § 1132(a)(3) ultimately makes the same claim (that he was wrongfully

14  denied benefits by IUPAT) and seeks the same remedy as his wrongful denial of benefits claim

15  (provision of benefits) under 29 U.S.C. § 1132(a)(1).  Because the remedy is available under §

16  1132(a)(1) and the theory of liability is similar, plaintiff may not resort to this equitable catchall

17  provision to seek the same relief.  See id. at 515 ("[W]here Congress elsewhere provided

18  adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief,

19  in which case such relief normally would not be 'appropriate.'").

20       Plaintiff does, however, make an argument regarding this section that could be cognizable

21  in relation to the 29 U.S.C. § 1132(a)(1) claim.  Plaintiff contends he was wrongfully denied

22  benefits because IUPAT's Rehabilitation Plan violated language in Exhibit A to the Reciprocal

23  Agreement, which provides that signatory funds may not make changes to Exhibit A.  ECF No.

24  18-1 at 200.  IUPAT contends that Section 3 of the Reciprocal Agreement, by its plain terms,

25  prohibits changes to how reciprocal hours are recognized pursuant to Exhibit A, but the

26  Rehabilitation Plan makes no such change.  IUPAT contends the Rehabilitation Plan does not

27  change how the fund recognizes hours worked for which zero contributions are made.

28  Accordingly, because the Rehabilitation Plan does not change how certain hours are recognized,

it does not violate the Reciprocal Agreement.  The court agrees that the Rehabilitation Plan does not obviously impact the Reciprocal Agreement.  Accordingly, this portion of the complaint should be dismissed.

    C. <u>Leave to Amend</u>

As stated above, leave to amend is granted liberally, particularly for pro se plaintiffs, except where it is clear that amendment cannot cure a problem with the complaint.  Here, the court is recommending only that plaintiff's claim for violation of the Reciprocal Agreement be dismissed.  This claim should be dismissed without leave to amend because amendment would be futile.  The relief which plaintiff seeks under this claim is properly pursued in relation to his claim for denial of benefits, which the court recommends not be dismissed.

## V.    Pro Se Plaintiff's Summary

The Magistrate Judge is recommending that the District Judge dismiss your current claims against Glaziers but allow you to bring an amended complaint that presents a claim against Glaziers for wrongful denial of benefits as to the period between your application and Glaziers' recognition of your pension benefits.  If the district judge agrees, you should file an amended complaint within 30 days of the district judge's order.

The magistrate judge is also recommending that your claim for violation of the Reciprocal Agreement against IUPAT be dismissed, but that your claim against IUPAT for wrongful denial of benefits not be dismissed.  This means that if you file an amended complaint to allege wrongful denial of benefits by Glaziers, you should also include the wrongful denial of benefits claim against IUPAT in the same amended complaint.

If you disagree with these recommendations, you may file objections within 21 days.  The district judge will make the final decision.

## VI.  Conclusion

Accordingly, the undersigned recommends as follows:

1. Glaziers' motion to dismiss (ECF No. 15) be GRANTED but that plaintiff be permitted to file an amended complaint within 30 days of a final decision in order to assert a claim for wrongful denial of benefits against Glaziers; and

2.  IUPAT's motion to dismiss (ECF No. 18) be GRANTED as to plaintiff's claim for violation of the Reciprocal Agreement but DENIED as to plaintiff's claim for wrongful denial of benefits.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: December 22, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

18